Cortlin H. Lannin (SBN 266488)
Raymond G. Lu (SBN 324709)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  clannin@cov.com
Email: rlu@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA  94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: mrodgers@cov.com

*Attorneys for Defendant Philips North America LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TULIISA MILLER, ADRIANNA CORTEZ, and BRIAN MAGADAN, individually and on behalf of all others similarly situated,<br><br>                                   Plaintiff,<br><br>        v.<br><br>PHILIPS NORTH AMERICA LLC,<br><br>                                   Defendant. | Civil Case No.: 3:24-cv-03781-RFL<br><br>**DEFENDANT PHILIPS NORTH AMERICA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: November 5, 2024<br>Time: 10:00 a.m.<br>Location: Courtroom 15<br>Judge: Hon. Rita F. Lin |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 5, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Rita F. Lin in Courtroom 15 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Philips North America LLC ("Philips") will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice Plaintiff's Complaint (Dkt. No. 1).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Declaration of Cortlin H. Lannin, the documents on file with the Court, and such further evidence and argument as the Court may permit.

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 2

III.   LEGAL STANDARD........................................................................................... 4

IV.   ARGUMENT ....................................................................................................... 4

     A.    Plaintiffs Fail to Allege an Actionable Misrepresentation or a Material Omission.. ................................................................................................... 4

     B.    Plaintiffs' Claims for Equitable Relief Should Be Dismissed for Independent Reasons. ................................................................................................... 11

     C.    Plaintiffs Fail to State a Claim Under the UCL's "Unlawful" or "Unfair" Prongs ..................................................................................................... 13

     D.    Plaintiffs Fail to State a Claim for Breach of Warranty........................................ 13

     E.    Plaintiffs Fail to State a Claim for Unjust Enrichment. ........................................ 14

     F.    Plaintiffs Lack Standing to Assert Claims Based on Products They Did Not Purchase. ................................................................................................... 14

V.    CONCLUSION.................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrade-Heymsfield v. Danone US, Inc.*,
    2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) ............................................................5

*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ........................................................15

*Arroyo v. Chattem, Inc.*,
    926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...........................................................7, 8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................4

*Baird v. Samsung Elecs. America, Inc.*,
    522 F. Supp. 3d 679 (N.D. Cal. 2021) ....................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................4

*Brown v. Madison Reed, Inc.*,
    622 F. Supp. 3d 786 (N.D. Cal. 2022) ....................................................................6

*Brown v. Nature's Path Foods, Inc.*,
    2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) ........................................................15

*Coffee v. Google, LLC*,
    2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............................................................14

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ...............................................................................9

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................................5

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ..................................................................13

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ..................................................................14

*Gallagher v. Chipotle Mexican Grill, Inc.*,
    2016 WL 454083 (N.D. Cal. Feb. 5, 2016) .............................................................6

*Granfield v. NVIDIA Corp.*,
    2012 WL 2847575 (N.D. Cal. July 11, 2012)........................................................................14

*Grausz v. Hershey Co.*,
    --- F. Supp. 3d ----, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024)..............................................8

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022) ...............................................................................................12

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...........................................................................7, 10, 14

*Hanscom v. Reynolds Consumer Prods. LLC*,
    2022 WL 591466 (N.D. Cal. Jan. 21, 2022) .........................................................................12

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ...........................................................*passim*

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .................................................................................6, 7, 9, 10

*Holt v. Foodstate, Inc.*,
    2016 WL 4625550 (S.D. Cal. Sept. 6, 2016) ........................................................................15

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ...............................................................................13

*Kumandan v. Google LLC*,
    2022 WL 103551 (N.D. Cal. Jan. 11, 2022) .........................................................................11

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .................................................................................6

*Martin v. Doctor's Best, Inc.*,
    2023 WL 6370230 (C.D. Cal. Aug. 25, 2023)..........................................................................8

*Maxwell v. Unilever U.S., Inc.*,
    2018 WL 1536761 (N.D. Cal. Mar. 29, 2018)..........................................................................6

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ................................................................................................14

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)......................................................................................9

*In re Plum Baby Food Litig.*,
    2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)......................................................9, 10, 11, 13

*Rodriguez v. Mondelez Glob. LLC,*
    703 F. Supp. 3d 1191 (S.D. Cal. 2023)...................................................................8

*Salameh v. Tarsadia Hotel,*
    726 F.3d 1124 (9th Cir. 2013) ..........................................................................4

*Scott v. Cintas Corp.,*
    2024 WL 3304793 (N.D. Cal. July 3, 2024).......................................................12

*Sharma v. Volkswagen AG,*
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ...............................................................13

*Sharpe v. Puritan's Pride, Inc.,*
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) .............................................................12

*Slowinski v. BlueTriton Brands, Inc.,*
    2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) ..............................................2, 3, 8, 9

*Smith v. L.G. Elecs. USA, Inc.,*
    2014 WL 989742 (N.D. Cal. Mar. 11, 2014).......................................................14

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) .........................................................................12

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ...........................................................................4

*Watkins v. MGA Ent., Inc.,*
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ...............................................................13

*Whiteside v. Kimberly Clark Corp.,*
    108 F.4th 771 (9th Cir. 2024) ...........................................................................5

*Wright v. Charles Schwab & Co.,*
    2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ....................................................13

**Other Authorities**

A. Pawlowski, *Baby Bottles Can Shed Millions of Microplastic Particles*, TODAY (Nov.
    3, 2020), https://www.today.com/health/microplastics-drinking-water-baby-formula-
    plastic-baby-bottles-shed-particles-t197037 (last accessed Aug. 29, 2024)............................11

Damian Carrington, *Bottle-Fed Babies Swallow Millions of Microplastics a Day, Study
    Finds*, GUARDIAN (October 19, 2020),
    https://www.theguardian.com/environment/2020/oct/19/bottle-fed-babies-swallow-
    millions-microplastics-day-study (last accessed Aug. 29, 2024)............................................11

Maria Godoy, *Study: Plastic Baby Bottles Shed Microplastics When Heated. Should You Be Worried?*, NAT'L PUB. RADIO, Oct. 19, 2020, https://www.npr.org/sections/goatsandsoda/2020/10/19/925525183/study-plastic-baby-bottles-shed-microplastics-when-heated-should-you-be-worried (last accessed Aug. 29, 2024) ...................................................................................................................11

*Microplastics and Nanoplastics in Foods*, FDA (July 24, 2024), https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods (last accessed August 29, 2024)). ...............................................3

News Release, AM. CHEM. SOC'Y, *Infants Have More Microplastics in Their Feces Than Adults, Study Finds* (Sept. 22, 2021), https://www.acs.org/pressroom/newsreleases/2021/september/infants-have-more-microplastics-in-their-feces-than-adults-study-finds.html (last accessed August 29, 2024) ......................................................................................................................2

Maria Godoy, *Study: Plastic Baby Bottles Shed Microplastics When Heated. Should You Be Worried?*, NAT'L PUB. RADIO, Oct. 19, 2020, https://www.npr.org/sections/goatsandsoda/2020/10/19/925525183/study-plastic-baby-bottles-shed-microplastics-when-heated-should-you-be-worried (last accessed Aug. 29, 2024) ...................................................................................................................11

Zhang et al., *Occurrence of Polyethylene Terephthalate and Polycarbonate Microplastics in Infant and Adult Feces*, 8 ENVIRON. SCI. TECHNOL. LETT., 989, 990 (2021) .......................3

Zhou et al., *How Many Microplastics Do We Ingest When Using Disposable Drink Cups?*, 441 J. HAZARDOUS MATERIALS (Jan. 2023) ...................................................................2

DEFENDANT PHILIPS NORTH AMERICA LLC'S MOTION TO DISMISS / Case No.: 3:24-cv-03781-RFL

## I.      INTRODUCTION

In this false advertising case, Plaintiffs allege that they purchased Avent-branded baby bottles sold by Philips and subsequently discovered that the bottles "leach harmful microplastics" when heated. Compl. ¶ 2.  The labels of all the challenged bottles include a representation that they are "BPA FREE," which refers to a specific type of chemical that can be used to manufacture plastics and that can allegedly cause negative health effects.  Plaintiffs do not allege that the bottles contain BPA.  Rather, they allege that this representation is deceptive because a reasonable consumer would interpret the "BPA FREE" representation to mean the bottles are free not just from BPA but *all* "harmful substances," including microplastics.  Plaintiffs also allege that Philips' failure to disclose that the bottles allegedly leach microplastics when heated constitutes a material omission.  On this basis, Plaintiffs seek to represent a class of individuals who purchased Avent-branded baby bottles, trainer cups, and sippy cups sold by Philips (collectively, the "Products") and bring claims under California's false advertising laws, as well as common law claims for unjust enrichment and breach of warranty.  But Plaintiffs' claims suffer from multiple defects and should be dismissed.

Most fundamentally, all of Plaintiffs' claims fail because they have failed to plead either an actionable misrepresentation or a material omission.  Plaintiffs' theory that a reasonable consumer would interpret a *truthful* "BPA FREE" representation to mean that the Products are free of *other* allegedly harmful substances is implausible, as courts have routinely concluded in dismissing other cases in which plaintiffs attempted to extrapolate discrete label claims into broad statements about other product characteristics.  Plaintiffs' attempt to plead a material omission theory also fails, because (among other flaws) Plaintiffs do not identify, as they must, what amount of microplastics the Products allegedly leach and what level of exposure to microplastics would create an unreasonable safety hazard.

Plaintiffs' claims fail for additional reasons.  Plaintiffs cannot proceed with their claims for equitable relief because they have an adequate remedy at law.  They have failed to allege the elements of a claim for breach of warranty.  And they did not purchase and thus lack standing to assert claims related to trainer cups and sippy cups, which are different in material ways from the baby bottles they did purchase.  For these and the additional reasons below, the Complaint should be dismissed in its entirety.

## II.    BACKGROUND

This case concerns a variety of baby bottles, trainer cups, and sippy cups that are sold by Philips under the "Avent" brand.  *See* Compl. ¶ 8 (listing challenged products).  All the Product labels include a representation that they are "BPA FREE," which refers to "Bisphenol A," a specific "chemical used in manufacturing polycarbonate plastics."  *Id.* at ¶ 31.  The Products are actually "made of polypropylene," which is a type of plastic that does not contain BPA.  *See id.* ¶ 25; ¶ 6 (distinguishing "[b]ottles made with BPA" from "bottles made from polypropylene).

Plaintiffs Tulisa Miller, Adrianna Cortez, and Brian Magadan allege that they purchased three different types of baby bottles.  *Id.* ¶¶ 13–15.  They bring claims on behalf of a putative nationwide class and California subclass for violation of California's Unfair Competition Law ("UCL"), *id.* ¶¶ 63–101, False Advertising Law ("FAL"), *id.* ¶¶ 102–108, and Consumers Legal Remedies Act ("CLRA"), *id.* ¶¶ 109–124, as well as for breach of warranty, *id.* ¶¶ 125–131, and unjust enrichment, *id.* ¶¶ 132–137. Plaintiffs assert these claims with respect to not only the specific baby bottles they purchased, but also all other "Avent-brand baby bottles, trainer cups, and spout/sippy cups sold to consumers in the United States."  *Id.* ¶ 8.

Plaintiffs allege that, because the Products are made from polypropylene, they "leach" unspecified amounts of microplastics when heated.  *See, e.g.*, *id.* ¶¶ 5, 6.  The Complaint describes microplastics as "small plastic particles less than 5 millimeters in diameter that form when solid plastics break down through abrasion, degradation, or chemical processes such as exposure to heat."  *Id.* ¶ 18. As sources cited in the Complaint confirm, these small particles are "everywhere, from indoor dust to food to bottled water."[1]  Researchers have thus concluded that it is "almost inevitable" that humans will be exposed to microplastics.[2]  As one court observed, "[m]icroplastics are everywhere."  *Slowinski v.*

---

[1] Lannin Decl. Ex. 1 (News Release, AM. CHEM. SOC'Y, *Infants Have More Microplastics in Their Feces Than Adults, Study Finds* (Sept. 22, 2021), https://www.acs.org/pressroom/newsreleases/2021/september/infants-have-more-microplastics-in-their-feces-than-adults-study-finds.html (last accessed August 29, 2024) (cited in Compl. ¶ 22 n.13)).

[2] Lannin Decl. Ex. 3 (Zhou et al., *How Many Microplastics Do We Ingest When Using Disposable Drink Cups?*, 441 J. HAZARDOUS MATERIALS  (Jan. 2023), at 7 (cited in Compl. ¶ 26, n. 19)).

*BlueTriton Brands, Inc.*, 2024 WL 3757097, at *2 (N.D. Ill. Aug. 9, 2024).  "Microplastics are probably in your mouth, and nose, and lungs, and everywhere else.  There might be microplastics on the piece of paper that you're holding right now.  There might be microplastics in the food you ate for dinner last night.  Or there might be microplastics in the air that you're breathing. They're inescapable."  *Id.*

Despite their ubiquity, "[l]ittle is known about the possible toxic effects of [microplastics] in humans," and studies purportedly examining the negative impact of human exposure to microplastics suffer "major limitation[s]."[3]  As the FDA recently explained, "[w]hile many studies have reported the presence of microplastics in several foods, including salt, seafood, sugar, beer, bottled water, honey, milk, and tea, current scientific evidence does not demonstrate that the levels of microplastics . . . detected in foods pose a risk to human health."[4]  Moreover, "because there are no standardized methods for how to detect, quantify, or characterize microplastics and nanoplastics, many of the scientific studies have used methods of variable, questionable, and/or limited accuracy and specificity."[5]

Plaintiffs advance two general theories of liability.  *First*, Plaintiffs challenge the "BPA FREE" representation that appears on all the Product labels.  Plaintiffs do *not* allege that the Products actually contain BPA or that this claim is otherwise false.  Rather, they allege that the representation is misleading because a reasonable consumer would interpret the "BPA FREE" claim "to mean the Product[s] [are] guaranteed, beyond the minimum consumer safety expectation for baby products, to not contain harmful substances."  Compl. ¶ 6.  Plaintiffs allege these "harmful substances" include microplastics that are leached when the Products are heated.  *Id.*

*Second*, Plaintiffs allege that Philips made a material omission in failing to disclose "that when the Products are heated as intended for ordinary use, they leach harmful microplastics."  *Id.* ¶ 3.  Plaintiffs allege that Philips was thus obligated to state "expressly, clearly, and conspicuously on the

---

[3] Lannin Decl. Ex. 2 (*See* Zhang et al., *Occurrence of Polyethylene Terephthalate and Polycarbonate Microplastics in Infant and Adult Feces*, 8  ENVIRON. SCI. TECHNOL. LETT., 989, 990 (2021)).

[4] Lannin Decl. Ex. 8 (*Microplastics and Nanoplastics in Foods*, FDA (July 24, 2024), https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods (last accessed Aug. 29, 2024)).

[5] *Id.*

Products' front packaging and labels that the Products pose severe health risks for children."  *Id.*  Plaintiffs do not allege that they actually tested any of the Products to determine if they "leach" microplastics when heated and, if so, how much; nor do they allege how many microplastics would need to be leached to constitute a "severe health risk" for children.  *Id.*

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "asks for more than a sheer possibility that a defendant has acted unlawfully"; a complaint alleging facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" of entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' claims sounding in fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).  This requires them to allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

In ruling on a motion to dismiss, this Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Philips has filed a Request for Judicial Notice contemporaneously with this motion seeking judicial notice of such materials.

## IV.   ARGUMENT

### A.   Plaintiffs Fail to Allege an Actionable Misrepresentation or a Material Omission.

All of Plaintiffs' claims hinge on the same two basic theories of deception: that the "BPA FREE" representation on the Product labels constitutes an affirmative misrepresentation, and that Philips has made a material omission in failing to inform consumers that the Products allegedly leach microplastics when heated.  Plaintiffs have failed to state a claim under either theory.

#### 1.   Plaintiffs Fail to Allege an Affirmative Misrepresentation.

Plaintiffs' claims under the UCL's fraudulent prong, FAL, and CLRA are governed by the

"reasonable consumer" standard, which requires them to "show that members of the public are likely to be deceived" by the challenged representation. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). The standard requires more "than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (cleaned up). Rather, Plaintiffs must allege "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Id.* The court may dismiss as a matter of law theories of deception that are "simply not plausible" or "rest on patently unreasonable assumptions." *Baird v. Samsung Elecs. America, Inc.*, 522 F. Supp. 3d 679, 687 (N.D. Cal. 2021).

Plaintiffs' affirmative misrepresentation theory is based on a single statement: the "BPA FREE" representation that appears on the Product labels. Compl. ¶¶ 6, 9. Plaintiffs do not and could not allege that the "BPA FREE" representation is literally false. Rather, Plaintiffs allege that "the reasonable consumer interprets the 'BPA FREE' claim to mean the Product is guaranteed, beyond the minimum consumer safety expectation for baby products, to not contain harmful substances." *Id.* ¶¶ 6, ¶ 36 (same). This theory fails for the simple reason that the "BPA FREE" representation is specific and truthful; it is not plausible that a reasonable consumer would interpret this representation about a very specific type of chemical as making a promise that the Products are free of any substances *other* than BPA, much less *all* "harmful substances."

Courts have consistently held that labels making "discrete, factual claims" like the "BPA FREE" claim here cannot be "implausibly extrapolated" into statements about other product characteristics. *See, e.g.*, *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *7 (N.D. Cal. Apr. 16, 2024); *Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019) ("[A]llegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning."). For instance, the *Hayden* court held that a reasonable consumer would not interpret representations that a flaxseed meal was "Non-GMO," "Gluten-Free," and "Organic" as conveying that the products "are healthy and made with quality ingredients and do not contain unsafe and unlawful levels of cadmium." 2024 WL 1643696, at *7.

Similarly, a reasonable consumer is unlikely to interpret a statement that fruit snacks are "gluten free" —which "is objectively true and communicates nothing more than the absence of gluten in the product"—to mean "that the Fruit Snacks contain no partially hydrogenated oils, low amounts of sugar or corn-syrup, or that the Fruit Snacks are otherwise healthful." *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103–04 (N.D. Cal. 2012).  Nor would a reasonable consumer interpret a label representation that a hair color product is "free of ammonia, resorcinol [and] PPD' and 'Ammonia Free'" as warranting that the product is "healthier, safer, or gentler than other hair color products." *Brown v. Madison Reed, Inc*., 622 F. Supp. 3d 786, 802 (N.D. Cal. 2022), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023).  And a reasonable consumer would not conclude that food made with "only non-GMO ingredients" would contain only meat and dairy "produced from animals that never consumed any genetically modified substances." *Gallagher v. Chipotle Mexican Grill, Inc*., 2016 WL 454083, at *3–4 (N.D. Cal. Feb. 5, 2016).  These cases stand for the straightforward proposition that Plaintiffs cannot state a claim based on the wholly implausible theory that a reasonable consumer would interpret "BPA FREE" to mean something entirely different than what it says.[6]

### 2. Plaintiffs Fail to Allege a Material Omission.

Unable to identify any false or misleading statements, Plaintiffs latch onto an alternative theory: that Philips "materially omits" that "when the Products are heated as intended for ordinary use, they leach harmful microplastics that cause long-term health complications for children."  Compl. ¶¶ 3, 30.  This omissions theory is no more viable than Plaintiffs' affirmative misrepresentation theory.

An omission is actionable when it is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018).  The Complaint does not allege that the purported omission that the

---

[6] To state a claim under the UCL, FAL, and CLRA, Plaintiffs must also allege that they reasonably relied on the "BPA FREE" claim.  To the extent Plaintiffs allege that they relied on the "BPA FREE" to conclude the Products are free of *other* substances, that reliance was unreasonable, which constitutes an independent reason to dismiss these claims.  *See Maxwell v. Unilever U.S., Inc.*, 2018 WL 1536761, at *4 (N.D. Cal. Mar. 29, 2018) (reliance not reasonable where complaint "fail[ed] to explain how Plaintiff could have read the words 'phosphoric acid' and 'citric acid' (or otherwise read the Pepsi label) and been lead to believe that Pepsi did not contain artificial flavors").

Products leach microplastics was "contrary to a representation actually made" by Philips.  For example, there is no suggestion the Product labels represent that they do *not* contain microplastics.  Nor, for the reasons discussed above, is it plausible that the alleged omission was contrary to the "implied meaning" of the "BPA FREE" claim.  *See, e.g.*, *Hayden*, 2024 WL 1643696, at *9 (concluding alleged omission was not contrary to either the literal or allegedly implied meaning of the challenged representations). That means that to state a claim, Plaintiffs must establish that Philips had a duty to disclose the supposedly omitted fact.  A duty to disclose only arises in one of two circumstances: where (1) the alleged omission "relates to an unreasonable safety hazard"; or (2) the omission "is material, central to the product's function," *and* (i) the defendant is plaintiff's fiduciary, (ii) has exclusive knowledge of material facts, (iii) actively conceals a material fact, (iv) or makes misleading partial representations.[7] *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022); *see also Hodsdon*, 891 F.3d at 857–63.  Plaintiffs fail to state a claim under either approach.

### a)      Plaintiffs Fail to Allege an Unreasonable Safety Hazard.

To sufficiently allege an "unreasonable safety hazard," Plaintiffs need at a minimum to allege how many microplastics the Products allegedly leach when heated, and that those amounts constitute an unreasonable safety hazard.  *See Hayden*, 2024 WL 1643696, at *9.  In other words, Plaintiffs must "specifically allege that [microplastics] *at the level present* in [the Products] makes statements about the product[s'] safety false or misleading."  *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (emphasis added).  They have not done so.

To start, Plaintiffs have not tested the Products and nowhere allege what amount of microplastics is contained in or released by the specific products at issue when they are heated.  Instead, Plaintiffs cite studies of entirely different products, such as breastmilk storage bags, which have no relation to how many microplastics the Products at issue here allegedly leach when heated.  *See* Compl. ¶ 20 n. 9 (citing study regarding unnamed brands of disposable breastmilk storage bags).  And while Plaintiffs artfully allege that one study found that "the Products' bottles made of polypropylene 'release microplastics with

---

[7] The latter four factors are often referred to as the "*LiMandri* factors."

values as high as 16,200,000 particles per litre,'" *in fact* that study does not identify the specific baby bottles that were tested, much less show that the Avent Products were tested.  *See* Compl. ¶ 25 and n.18 (citing a study measuring microplastics released by ten unnamed brands of polypropylene baby bottles); *see also id*. ¶ 28 (discussing same study); Lannin Decl. Ex. 5 at 747–48 (noting that ten unidentified baby bottles were tested).  In short, it is unknown how many microplastics the Products supposedly leach when heated, and Plaintiffs' reliance on a *single* study of unknown baby bottles, and studies of other products, cannot provide a plausible basis from which to extrapolate.  *See Martin v. Doctor's Best, Inc.*, 2023 WL 6370230, at \*6 (C.D. Cal. Aug. 25, 2023) (plaintiff failed to state CLRA claim based on studies challenging defendant's statements about brain supplement where "the cited studies did not test the Supplement itself or comparable supplements with the same active ingredients in similar doses").

Even had Plaintiffs alleged how many microplastics the Products leach when heated, they do not "plead with the required particularity *what level* of [microplastics] makes [the Products] unsafe." *Arroyo*, 926 F. Supp. 2d at 1079 (emphasis added).  Plaintiffs cite studies purporting to show, for example, that exposing infants to microplastics can "profoundly impact" the "digestive, reproductive, central nervous, immune, and circulatory systems" and lead to "long-term health impairments."  Compl. ¶¶ 18–24.  But this thicket of footnotes should not obscure a critical fact: Plaintiffs do not allege any plausible standard for determining what *level* of exposure to microplastics could cause such ailments or otherwise create an "unreasonable safety hazard."  Notably, Plaintiffs do not allege that the presence of microplastics at *any* level is unhealthy, nor could they—"[m]icroplastics are everywhere."  *Slowinski*, 2024 WL 3757097, at \*2; *see also supra* at 2–3.[8]

Courts routinely dismiss fraudulent omission claims where, as here, plaintiffs fail to allege that the amount of the challenged substance in a product constitutes an unreasonable safety hazard.  *See*

---

[8] Even had Plaintiffs attempted to plead (implausibly) that *any* exposure to microplastics is unsafe, their omission claim would still fail.  Courts have rejected attempts to plead an unreasonable safety hazard based on generalized allegations that a substance is unsafe in any quantity. *See Grausz v. Hershey Co.*, --- F. Supp. 3d ----, 2024 WL 312688, at \*5 (S.D. Cal. Jan. 25, 2024) (finding no unreasonable safety hazard where plaintiff alleged that lead and cadmium are carcinogens, and that "there may be no safe level of exposure to a carcinogen, and that [defendant's] products contain some of these substances."); *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) (same).

*Arroyo*, 926 F. Supp. 2d at 1079 (dismissing omission claims where plaintiff "d[id] not allege a level of hexavalent chromium in [the product] that materially changes its safety profile from safe to unsafe"); *Hayden,* 2024 WL 1643696, at \*8 (dismissing omission claims where plaintiff "fail[ed] to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy") (emphasis in original); *see also In re Plum Baby Food Litig.*, 2024 WL 1354447, at \*5 (N.D. Cal. Mar. 28, 2024) (granting summary judgment on omission claim where "plaintiffs d[id] not establish that the amount of heavy metals and perchlorate in defendant's Baby Food poses an unreasonable safety hazard").  This Court should reach the same result.

### b)   Plaintiffs Fail to Allege a Material Omission That "Affects the Central Functionality" of the Products.

Plaintiffs also fail to allege an omission claim under an alternative argument that the alleged omission—the leaching of microplastics when the Products are heated—is material and "affects the central functionality" of the Products.  *Hodsdon*, 891 F.3d at 862.

To start, Plaintiffs' cursory allegations that the omission is "material" are implausible.  *See, e.g.*, Compl. ¶ 41.  "An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).  Here, given both the ubiquity of microplastics and the fact that "the effect of microplastics on humans is not fully understood," it is not plausible that a reasonable consumer would consider it material that the Products allegedly leach microplastics when heated.  *See Slowinski*, 2024 WL 3757097, at \*2.  As that court observed, "[n]o reasonable consumer would expect a disclosure about the presence of microscopic particles."  *Id.*, at \*14.  If "[e]ven the most health-conscious person among us can't escape the possibility of consuming microplastics," in other words, there is no reason to think a reasonable consumer would have made a different purchasing decision had the alleged omission been disclosed.  *Id.*; *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (trace amounts of glyphosate in pet food marketed as "natural" was "not likely to affect consumers' decisions in purchasing the product").

In addition, Plaintiffs have not alleged that the omission affects the central functionality of the Products, meaning it renders the Products "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864.   The "central functionality" of the Products is to provide a means of feeding infants and young children.  *See* Compl. ¶ 29 (alleging that the Products are "essential feeding devices" for infants and young children).  Plaintiffs do not—and cannot—allege that the omission renders the Products incapable of use for that purpose.  Even assuming *arguendo* that the Products leach some amount of microplastics when heated, this does not affect the "central functionality" of the Products: they are still baby bottles, trainer cups, and sippy cups, and fully capable of being used to feed infants and young children.

Courts have routinely rejected omission claims on similar facts.  In *Hayden*, for example, the plaintiff alleged that the manufacturer of a brand of flaxseed meal marketed as "non-GMO" and "Organic" had a duty to disclose the presence of cadmium in the product.  *See Hayden*, 2024 WL 1643696, at *9.  The court disagreed, concluding that the plaintiff "ha[d] not adequately pled that the presence of cadmium is 'central to the product's function[.]'"  *Id*. at *9–10.  As the court explained, "[t]he alleged presence of cadmium notwithstanding, Plaintiff has not plausibly pled that the Products have ceased to function as a food, or even more specifically as flaxseed."  *Id*. at *10; *see also In re Plum Baby Food Litig*., 2024 WL 1354447, at *6 ("Even if consumers find the presence of these trace contaminants to be of material concern, the Baby Food continues to function as food if it contains these contaminants.").  Likewise here, Plaintiffs do not plausibly allege that the microplastics purportedly leached by the Products when heated precludes them from being used to feed infants and children.

Plaintiffs also fail to allege any of the four factors that would be necessary to establish a duty to disclose under the "central functionality" approach.  Plaintiffs do not allege, for example, that Philips is Plaintiffs' fiduciary.  *See Hammerling*, 615 F. Supp. 3d at 1085.  Nor do they allege facts to establish that Philips "had exclusive knowledge of material facts not known to the plaintiff" or "actively conceal[ed] a material fact."  *Id.*  To the contrary, it would be obvious to any reasonable consumer simply looking at the Products that they are made of plastic.  Furthermore, Philips discloses that they are made of polypropylene on the website for the Products.  *See* Lannin Decl. Exs. 6–7; *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *5 (rejecting allegation that baby food manufacturer had exclusive

knowledge its products contained heavy metals where "defendant has disclosed on its own website that its products may contain heavy metals").

Any argument that Philips had exclusive knowledge of the purported omission is also foreclosed by the Complaint's reliance on publicly available materials discussing plastic baby bottles leaching microplastics when heated.  *See* Compl. ¶¶ 25-27, n.18, 24–25.  These studies were published online and covered extensively by the media before this lawsuit was filed.  *See* Compl. ¶ 22 n. 13 (citing September 22, 2021 press release regarding study suggesting that infants may be exposed to microplastics through baby bottles).[9]  "The public availability of this information undermines plaintiffs' arguments that their allegations are sufficient to support defendant's exclusive knowledge and that plaintiffs had no reason to know of these facts."  *In re Plum Baby Food Litig*., 2024 WL 1354447, at *5 (baby food manufacturer did not have exclusive knowledge of heavy metals in products where "the risk of the presence heavy metals and perchlorate in the food supply, including in ingredients used in defendant's products, has been covered by the media before this lawsuit was filed"); *Kumandan v. Google LLC,* 2022 WL 103551, at *9 (N.D. Cal. Jan. 11, 2022) (rejecting allegation that Google had exclusive knowledge that its home assistant devices would activate based on certain sounds where materials disclosing such capabilities "were publicly available prior to Plaintiffs acquiring their Google Home devices").

### B.   Plaintiffs' Claims for Equitable Relief Should Be Dismissed for Independent Reasons.

Plaintiffs seek equitable relief in the form of restitution and an injunction under the UCL, FAL, CLRA, and their unjust enrichment claim.  *See* Compl. ¶¶ 73–101 (UCL); *id. ¶* 108 (FAL); *id*. ¶¶ 122–

---

[9] *See also* Lannin Decl. Ex. 9 (Maria Godoy, *Study: Plastic Baby Bottles Shed Microplastics When Heated. Should You Be Worried?*, Nat'l Pub. Radio, Oct. 19, 2020, https://www.npr.org/sections/goats andsoda/2020/10/19/925525183/study-plastic-baby-bottles-shed-microplastics-when-heated-should-you-be-worried (last accessed Aug. 29, 2024)); Lannin Decl. Ex. 10 (Damian Carrington, *Bottle-Fed Babies Swallow Millions of Microplastics a Day, Study Finds*, Guardian (October 19, 2020), https:// theguardian.com/environment/2020/oct/19/bottle-fed-babies-swallow-millions-microplastics-day-study (last accessed Aug. 29, 2024)); Lannin Decl. Ex. 11 (A. Pawlowski, *Baby Bottles Can Shed Millions of Microplastic Particles*, TODAY (Nov. 3, 2020), https://www.today.com/health/microplastics-drinking-water-baby-formula-plastic-baby-bottles-shed-particles-t197037 (last accessed Aug. 29, 2024)).

23 (CLRA).[10]  The Ninth Circuit has held unequivocally that a plaintiff seeking equitable relief must first "establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of restitution claims when plaintiff had adequate legal remedy); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (affirming dismissal of UCL claim because plaintiff "had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue it").

Plaintiffs fail to clear this bar.  They allege that no adequate remedy at law exists because "Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action" that, for example, have shorter statutes of limitations or have additional elements that the UCL does not.  *See* Compl. ¶ 49.  Courts have consistently rejected similar arguments.  *See Scott v. Cintas Corp.*, 2024 WL 3304793, at *8 (N.D. Cal. July 3, 2024) (observing that "several courts have rejected the argument that a longer statute of limitations under the UCL renders legal claims based on the same underlying alleged actions inadequate") (collecting cases); *Hanscom v. Reynolds Consumer Prods. LLC*, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022) ("Plaintiff alleges that she may be unable to obtain damages for her CLRA and common law claims if she is unable to prove certain elements of those claims, but these allegations do not establish that the damages she seeks are necessarily inadequate or incomplete.").

Similarly unpersuasive is Plaintiffs' allegation that damages are inadequate because an injunction is necessary to prevent Philips from engaging in the alleged misconduct and "dispel the public misperception" concerning the safety of Products.  Compl. ¶ 49.  As the Complaint repeatedly alleges, Plaintiffs were purportedly "harmed in the amount of the purchase price they paid for the Products" as a result of the alleged mislabeling, and "suffered and continue to suffer economic losses and other damages[.]"  *See, e.g.*, Compl. ¶¶ 74, 84, 92, 101.  This is "exactly the type of injury for which

---

[10] Plaintiffs also purport to seek damages for each claim.  However, it is well established that remedies under the UCL and FAL are "limited to injunctive relief and restitution."  *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003)).

legal remedies are appropriate." *Sharma v. Volkswagen AG,* 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (dismissing UCL, CLRA, and unjust enrichment claims where plaintiffs' alleged "a loss of money and/or loss in value of their Class Vehicles" due to defendant's misrepresentations and omissions); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (dismissing claim for injunctive relief under UCL seeking to compel defendant to provide information about data breach and institute data protection policies, because "the potential harm caused by both actions may be remedied by money damages"). Plaintiffs' UCL, FAL, and unjust enrichment claims should therefore be dismissed, as should their claim for equitable relief under the CLRA.

### C. Plaintiffs Fail to State a Claim Under the UCL's "Unlawful" or "Unfair" Prongs.

Plaintiffs attempt to plead claims under the "unlawful" and "unfair" prongs of the UCL based on the allegedly deceptive labeling of the Products. *See* Compl. ¶¶ 75–84 (unfair prong); *id.* ¶¶ 93–101 (unlawful prong). These claims are wholly derivative of Plaintiffs' claim under the fraudulent prong of the UCL and should be dismissed for the reasons described above. *See supra* 4–6; *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing claims under unlawful and unfair prongs of UCL based "on the same alleged conduct the Court found inadequate under the fraudulent misrepresentation and omission theories"). In addition, Plaintiffs have not adequately alleged that Philips' alleged conduct was "unfair" within the meaning of any standard courts use to asses unfairness. *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *7 (concluding defendant's selling of allegedly contaminated baby food was not "unfair"). Indeed, Plaintiffs do little more than recite the elements of those tests, which is an independent reason to dismiss these claims. *See Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020) ("The plaintiff's recitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim.").

### D. Plaintiffs Fail to State a Claim for Breach of Warranty.

To state a claim for breach of express warranty, Plaintiffs must allege a breach of "the exact terms of an express warranty" by identifying a "specific and unequivocal written statement" that is untrue. *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021). But the only "written statement" on which Plaintiffs focus is the "BPA FREE" representation, which Plaintiffs do not allege is

untrue.  That dooms this claim at the threshold.  *See Smith v. L.G. Elecs. USA, Inc.*, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014) (no breach of express warranty where the well-pled allegations did not "render[] the alleged express warranties untrue").

Plaintiffs' failure to allege a defect that impairs the central function of the Products is also fatal to their implied warranty claim.  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.").  As discussed above, Plaintiffs fail to allege that the alleged leaching of microplastics when the Products are heated renders them unsafe for ordinary use.  *Supra* at 6–11; *Hayden,* 2024 WL 1643696, at *10 (dismissing implied warranty claim where plaintiff "fail[ed] to allege that the level of cadmium allegedly present in the Products constitute a level at which the complained-of health risks occur").

### E.     Plaintiffs Fail to State a Claim for Unjust Enrichment.

To establish a claim of quasi-contract or unjust enrichment, Plaintiffs must plausibly allege that the "defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  Since Plaintiffs have "fail[ed] to sufficiently plead an actionable misrepresentation or omission, [their] restitution claim must be dismissed." *Hammerling*, 615 F. Supp. 3d at 1096; *see also Coffee v. Google, LLC*, 2022 WL 94986, at *10 (N.D. Cal. Jan. 10, 2022) (dismissing unjust enrichment claim where plaintiffs "received exactly what they paid for").  Moreover, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have an adequate remedy at law in the form of monetary damages.  *Supra* at 11–13.

### F.     Plaintiffs Lack Standing to Assert Claims Based on Products They Did Not Purchase.

Plaintiffs allege that they each purchased a specific type of baby bottle, *see* Compl. ¶¶ 13–16, but nonetheless assert claims with respect to all "Avent-brand baby bottles, trainer cups, and spout/sippy cups,"  *Id.* ¶ 8.  In the absence of binding Ninth Circuit guidance, some courts have concluded (correctly, in Philips' view) that, pursuant to basic constitutional principles, these Plaintiffs necessarily lack standing to assert claims regarding products they did not purchase, because they could not have been harmed by any alleged misrepresentations about those unpurchased products.  *See, e.g., Granfield*

*v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012).  However, Philips recognizes that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Nature's Path Foods, Inc.*, 2023 WL 2699978, at *4 (N.D. Cal. Mar. 29, 2023).  The determination of "substantial similarity" generally turns on "whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

Even if this Court is inclined to adopt the "substantial similarity" analysis for these issues, Plaintiffs lack standing under that test.  Plaintiffs allege that the Products are deceptively labeled because they leach microplastics *when heated*.  But in this regard the baby bottles Plaintiffs purchased are materially different from the trainer cups and sippy cups they did not, because unlike baby bottles the cups are used to hold many non-heated liquids such as juice.  *See* Compl. ¶ 25 (alleging "consumers understand that the regular and ordinary use of *baby bottles* involves holding heated liquids) (emphasis added); *Holt v. Foodstate, Inc.*, 2016 WL 4625550, at *2 (S.D. Cal. Sept. 6, 2016) (finding no "substantial similarity" based on "diversity of functions" between the purchased and unpurchased products).  Even crediting Plaintiffs' theory of the case, in other words, these products do not leach microplastics, and it cannot be said "the resolution of the asserted claims will be identical" as between the baby bottles and the other products.  *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8–9 (N.D. Cal. Mar. 13, 2014) (dismissing claims as to unpurchased products where "fact-specific analyses of each product will be required").  Plaintiffs thus lack standing to assert claims based on the latter.

## V.    CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

DATED:  September 3, 2024

Respectfully submitted,


By: */s/ Cortlin H. Lannin*
Cortlin H. Lannin (SBN 266488)
Raymond G. Lu (SBN 324709)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  clannin@cov.com
Email:  rlu@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA  94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: mrodgers@cov.com

*Attorneys for Defendant Philips North America LLC*