UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TULIISA MILLER, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>PHILIPS NORTH AMERICA LLC,<br><br>   Defendant. | Case No. 24-cv-03781-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

  On June 25, 2024, Tuliisa Miller, Adrianna Cortez, and Brian Magadan ("Plaintiffs") filed this action against Philips North America LLC ("Defendant"), alleging that Defendant "misleadingly markets, advertises, labels, and packages certain of its baby and infant bottles and cups" to maximize profits and gain an unfair advantage against its competitors. (Dkt. No. 30 ("FAC") ¶ 3.) Specifically, Plaintiffs allege that Defendant deceptively mislabels its Products as "BPA Free"—which leads consumers to believe that the Products contain no harmful plastic byproducts—and fails to disclose that, in fact, the Products leach toxic microplastics when used as directed. In their First Amended Complaint ("Complaint" or "FAC"), Plaintiffs assert claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"), in addition to bringing claims for Unjust Enrichment and Breach of Warranty. For the reasons stated below, Defendant's motion to dismiss is granted in part and denied in part. (Dkt. No. 34.) This order assumes that the reading is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

I.      UCL, FAL, AND CLRA CLAIMS

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL "prohibits any 'unfair, deceptive, or misleading advertising.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17500). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. "'Courts often analyze these statutes together,' as the Court does here, 'because they share similar attributes.'" *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1166 (S.D. Cal. 2024) (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)).

Plaintiffs advance two different theories in support of these claims: (1) that Defendant's description of the Products as "BPA Free" was an affirmative misrepresentation, and (2) that Defendant's failure to disclose that the Products leached microplastics when used as directed was a material omission because it constituted (i) an unreasonable safety hazard that was (ii) material and central to the Products' function. Plaintiffs do not state viable claims based on their affirmative misrepresentation theory, but do state a claim for material omission of an unreasonable safety hazard, as further explained below.[1]

A.      **Affirmative misrepresentation theory.**

In their Complaint, Plaintiffs allege that "consumers are [] deceived and misled by Defendant's 'BPA Free' claim on the Products' front labels." (FAC ¶ 6.) Although Plaintiffs concede that the "BPA Free" label is "technically accurate," they argue that the claim "creates a false sense of security as to the safeness and quality of the Products" because the "reasonable consumer interprets the 'BPA Free' claim to mean the Product is guaranteed, beyond the minimum consumer safety expectations for baby products, to not contain harmful plastic byproducts." (*Id.* ¶¶ 6, 36.)

---

[1] Defendant argues that Plaintiffs lack standing to assert their claims based on Products they did not purchase. However, a plaintiff may have standing to assert claims for unnamed class members based on products [they] did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Plaintiffs have sufficiently alleged that similarity here.

The "reasonable consumer" test governs UCL, FAL, and CLRA claims. Under this test, Plaintiffs must allege that "members of the public are likely to be deceived" by the challenged representations. *Williams*, 552 F.3d at 938 (internal quotations and citations omitted); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (requiring more than a "mere possibility" that a label "might conceivably be misunderstood by some few customers viewing it in an unreasonable manner" (internal citation omitted)). Here, Plaintiffs challenge a singular representation included on the front label of each Product stating that it is "BPA Free," arguing that the representation misleads consumers by giving the impression that the Products do not contain any harmful plastic byproducts.

Representations must be analyzed according to what they "actually say[]," and not based on their "implied meaning." *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-cv-00589, 2019 WL 3817948, at *9 (S.D. Cal. Aug. 14, 2019). Here, the representations that the Products are "BPA Free" are specific and truthful, and therefore, cannot be treated as affirmative misrepresentations. BPA—an abbreviation for Bisphenol A—is a particular type of plastic that is not used in Defendant's Products. And such a statement that the Products are free of BPAs cannot be extrapolated to imply that the Products are devoid of *all* harmful plastic byproducts. *See Hayden v. Bob's Red Mill Natural Foods, Inc.*, No. 23-cv-03862, 2024 WL 1643696, at *7 (N.D. Cal. Apr. 16, 2024) (rejecting plaintiff's theory that representations that the products were "Non-GMO," "Gluten Free," and "Organic" misleadingly contributed "to an overall imprimatur of healthiness" because that would constitute an "implausibl[e] extrapolate[ion]" of "discrete, factual claims"). Accordingly, Plaintiffs have not identified a misleading representation as the basis for their claims.

        B.        **Material omission theory.**

Plaintiffs also allege that Defendant failed to inform consumers that the Products leach harmful microplastics when used as directed, causing consumers to "believe[] that the Products do not pose any risk of harm." (FAC ¶ 3.) On a material omission theory, the UCL, FAL, and CLRA claims are similarly governed by the reasonable consumer test. A duty to disclose arises

where (1) the alleged omission relates to "an unreasonable safety hazard" or (2) the alleged omission is "material" and "central" to the product's function, and (i) the defendant is plaintiff's fiduciary; (ii) defendant has exclusive knowledge of the material facts; (iii) defendant actively conceals a material fact; or (iv) defendant makes partial misrepresentations.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022); *see also LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Ct. App. 1997).

Plaintiffs allege both theories in support of a duty to disclose:  (1) that the omission relates to an unreasonable safety hazard to infants using the Products, and (2) that the omission is material and central to the function of a baby bottle, trainer cup, or sippy cup.  As further explained below, the first theory is viable, though the second is not.

### 1.     Unreasonable safety hazard.

To sufficiently allege an unreasonable safety hazard that gives rise to a duty to disclose, Plaintiffs must state facts to support an inference of a plausible connection between the amount of microplastics leached from the Products and the potential harms associated with ingesting plastic byproducts at those levels.  *See In re Trader Joe's*, 726 F. Supp. 3d at 1170 ("While the Court recognizes Plaintiffs may not be able to pinpoint a specific level at which these Products would become an unreasonable safety hazard or unfit for human consumption, they have to at least provide *some connection* between the general harms possible from Heavy Metals and the level of Heavy Metals in these Products" (emphasis added)).  Plaintiffs have done so.

Plaintiffs have sufficiently alleged a plausible connection between the amount of microplastics potentially leached by the Products and the associated harms to infants—a particularly sensitive population.  First, as a threshold requirement, Plaintiffs have pled sufficient information as to the specific levels of microplastics that are leached by the Products. Specifically, the Complaint cites to a 2020 study, which documents that feeding bottles made from polypropylene—the same material that Defendant's bottles are made from—"'release microplastics with values as high as 16,200,000 particles per litre,' and that 'sterilization and exposure to high temperature water significantly increase microplastic release.'"  (FAC ¶ 29

(quoting Dunzhu Li et al., *Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation*, 1 Nature Food 746, 746 (2020)).) Additionally, the Complaint cites a study revealing that a "single infant consuming formula from polypropylene bottles ingests between 14,600 and a staggering 4.55 million microplastic particles every single day." (*Id.* ¶ 31 (citing Kazi Albab Hussain et al., *Assessing the Releast of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health*, 57 Env't Sci. & Tech. 9782, 9782 (2023)).) As the Complaint further details, "[p]ut differently, the amount of microplastics infants are exposed to just from infant feeding bottles[] is approximately 2,600 times higher than the total daily consumption of microplastics for adults from water, food, and air combined." (*Id.*)

This information is sufficient to allege that the plastic feeding bottles leach microplastics at high levels. Though Defendant argues that Plaintiffs failed to test the *specific products* at issue in the case—i.e., those manufactured by Defendant—the studies that measure microplastic release rates of similar polypropylene products provides sufficient circumstantial evidence to infer that similar rates of release occur during the course of use of Defendant's Products.[2]

At this stage, Plaintiffs are not required to allege the specific level at which microplastics pose a danger to the sensitive population. Rather, it is sufficient to allege a plausible connection between the harms to infants and the significant bioaccumulation of microplastics at the high levels described above. In their Complaint, Plaintiffs do not simply allege that microplastics may cause general harms to human health. Rather, the Complaint specifically references studies showing that "[e]xposure to even low doses of microplastics during a child's early development may cause long-term health complications later in life." (*Id.* ¶ 19.) The Complaint cites studies

---

[2] In deciding motions to dismiss, courts may consider "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Exhibits 1 through 10 of Defendant's Request for Judicial Reference are incorporated by reference, as they are cited in Plaintiffs' Complaint. Defendant's Request for Judicial Notice, with respect to Exhibits 11 through 14 is denied as moot because the Court did not rely on these documents in deciding this motion. (Dkt. No. 35.)

showing that "microplastics alter the composition of gut microbiota, which play a crucial role in digestion, nutrient absorption, and immune system development," and that microplastics can "'produce a toxic effect on the digestive tract[]' that [can] cause irreversible changes in the reproductive axis and central nervous system of offspring after prenatal and neonatal exposure, affect the immune system due to their physicochemical properties, and can cause chronic pulmonary disease." (*Id.* ¶ 18 (quoting Nur Hanisah Amran et al., *Exposure to Microplastics During Early Development Stage: Review of Current Evidence*, 10 Toxics 597 (2022)).) The Complaint further alleges that microplastics are particularly harmful to infants and young children because, during "critical periods of development, . . . exposure to microplastics can profoundly impact various bodily systems—including the digestive, reproductive, central nervous, immune, and circulatory systems—leading to long-term health impairments." (*Id.* ¶ 20.) On these facts, Plaintiffs have plausibly alleged that microplastics leached at these extraordinarily high levels by Products that are designed to be used many times in a single day pose an unreasonable health hazard for infants.

### 2. Central functionality of the product.

In the alternative, Plaintiffs argue that the omission affects the central functionality of the Products, which, according to Plaintiffs, is to "provide a *safe* means for delivering formula and other liquids to babies and young children," (*Id.* ¶ 34 (emphasis added).). However, in order "[t]o satisfy the 'central function' prong, plaintiffs must establish that the defect renders the product 'incapable of use by any consumer.'" *In re Plum Baby Food Litig.*, No. 21-cv-00913, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018)). Here, the Products' central function is to provide a means for delivering formula to infants, and there is no question that the Products function in that respect—i.e., the bottles can be used to feed babies and young children.[3] *See, e.g.*, *id.* (concluding that, "[e]ven if consumers find the presence of these trace contaminants to be of material concern, the

---

[3] Because the omission does not go to the Product's central functionality, the Court need not reach whether any of the *LiMandri* factors are satisfied.

Baby Food continues to function as food if it contains these contaminants"). To the extent that a question exists about whether the Products are made with safe materials, the duty to disclose is more appropriately analyzed as an obligation that arises due to the alleged unreasonable hazard that the Products present, as opposed to because there is an issue with the Products' central functionality. *See Hodsdon*, 891 F.3d at 864 (noting that the "defect in question" may not "go to the central functionality of the product, but still [may] create[] a safety hazard"). Therefore, this theory does not give rise to a duty to disclose, nor can it provide an alternative basis for liability.

    C.    **Restitution**

Having determined that Plaintiffs have adequately alleged a material omission for failure to disclose an unreasonable safety hazard, the next question is whether Plaintiffs' claims for restitution based on that omission survive. It is well established that relief under the UCL and FAL is limited to restitution and injunctive relief. The CLRA, on the other hand, provides for damages in addition to equitable relief. Defendants argue that, under *Sonner v. Premier Nutrition Corp.*, Plaintiffs must allege that they lack an adequate remedy at law—i.e., they are not entitled to damages—in order to obtain equitable relief in the form of restitution under any of these claims. 971 F.3d 834, 841 (9th Cir. 2020) ("[A] federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA."); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022). Here, Plaintiffs have alleged that the "scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein" and that the "UCL also creates a cause of action for violations of law." (FAC ¶ 54(b).) At the pleading stage, where plaintiffs may seek relief in the alternative or different types of relief, this is sufficient to allege that Plaintiffs lack an adequate remedy at law—and thus, that Plaintiffs' may be entitled to restitution. *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. Jan. 17, 2023) (finding that plaintiffs' allegations that legal remedies were not as certain as equitable remedies to be sufficient to survive a motion to dismiss); *Chebul v. Tuft & Needle, LLC*, No. 24-cv-02707, 2024 WL 5257021 (C.D. Cal. Oct. 9, 2024). Therefore, because Plaintiffs have plausibly alleged that they may be entitled to

equitable relief, the motion to dismiss Plaintiffs' claims for restitution is denied.

### D. Injunctive Relief

To satisfy the standing requirement for injunctive relief, Plaintiffs must plausibly allege that they desire to purchase the Products again in the future, if labeled correctly. *Renn v. Otay Lakes Brewery, LLC*, No. 23-cv-01139, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024). Plaintiffs have failed to make a plausible allegation of that kind. On the one hand, the Complaint states that plaintiffs have a desire to repurchase the Products if they are "safe (i.e., if the Products did not pose a risk of the Material Danger) or if the Products' labels allowed Plaintiff to make a fully informed purchase decision." (FAC ¶¶ 13-15.) However, the Complaint also states that "[c]onsumers consider the safety of the Products to be material and central to the Products' function," and that "consumers do not desire to purchase feeding device products that expose vulnerable children to dangers such as exposure to microplastics." (*Id.* ¶ 34.) These latter statements indicate that Plaintiffs do not have a desire to repurchase these Products—so long as they leach microplastics at the levels alleged—regardless of the disclosure provided. If that is the case, then Plaintiffs do not have standing to pursue injunctive relief. However, given the ambiguity in the Complaint, the Court cannot conclude that amendment would be futile. Accordingly, Plaintiffs' injunctive relief claims under the UCL, FAL, and CLRA are dismissed for lack of standing, with leave to amend.

## II. BREACH OF WARRANTY CLAIM

To state a claim for breach of express warranty, Plaintiffs must allege that the "exact terms" of the express warranty were breached. *Watkins v. MGA Entertainment, Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021). As previously discussed, no "specific and unequivocal written statement" was made that gave rise to a breach, since the representation that the bottles are "BPA Free" is true. *Id.* Thus, Plaintiffs have failed to state a claim for breach of express warranty. On this theory, because it does not appear that Plaintiffs can identify such a statement that would give rise to a breach of express warranty, the claim is dismissed without leave to amend.

Furthermore, Plaintiffs fail to sufficiently allege a breach of implied warranty claim. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012) (quoting *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 290 (Ct. App. 2009). For the reasons stated above, the "ordinary purpose" for which Defendant's Products are used is to deliver formula to infants and young children. Plaintiffs are not contesting that the Products work to achieve that aim, but instead are alleging that the microplastics that leach from the Products make them unsafe for use. But that allegation does not render the Products unusable by consumers, and Plaintiffs do not identify how they would be able to amend their allegations to challenge the fitness for the ordinary purpose of the Products themselves. Therefore, Plaintiffs' claim for breach of warranty is dismissed without leave to amend.

## III.    UNJUST ENRICHMENT CLAIM

Finally, Plaintiffs assert a claim for unjust enrichment. When claims of "unjust enrichment are based on the same conduct on related statutory claims, these claims rise and fall together." *In re Plum Baby Food*, 2024 WL 1354447, at *9. Therefore, because Plaintiffs' UCL, FAL, and CLRA claims survive, so too does Plaintiffs' claim for unjust enrichment. Therefore, the motion to dismiss this claim is denied.

## IV.    CONCLUSION

Based on the reasons stated above, the motion to dismiss Plaintiffs' claims for restitution under the UCL, FAL, and CLRA and Plaintiffs' claim for unjust enrichment is denied. The motion to dismiss Plaintiffs' claims for injunctive relief under the UCL, FAL, and CLRA for lack of standing is granted with leave to amend. The motion to dismiss Plaintiffs' claim for breach of warranty is denied without leave to amend.

If Plaintiff wishes to file an amended complaint correcting the deficiencies identified above, counsel shall do so within **21 days of the date of this Order**. The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal

Rule of Civil Procedure 15.

    **IT IS SO ORDERED.**

Dated: February 20, 2025

RITA F. LIN<br>
United States District Judge