Cortlin H. Lannin (SBN 266488)
Raymond G. Lu (SBN 324709)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: clannin@cov.com
Email: rlu@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: mrodgers@cov.com

*Attorneys for Defendant Philips North America LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TULIISA MILLER, ADRIANNA CORTEZ, and BRIAN MAGADAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHILIPS NORTH AMERICA LLC,<br><br>Defendant. | Civil Case No.: 3:24-cv-03781-RFL<br><br>**DEFENDANT PHILIPS NORTH AMERICA LLC'S NOTICE OF MOTION AND MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Date: May 13, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 15<br>Judge: Hon. Rita F. Lin |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 13, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Rita F. Lin in Courtroom 15 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Philips North America LLC ("Philips") will and hereby does move this Court, under 28 U.S.C. § 1292(b), for an order certifying the Court's Order Granting in Part and Denying in Part Philips' Motion to Dismiss the First Amended Complaint (ECF No. 46) ("Order") for interlocutory review.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the documents on file with the Court, and such further evidence and argument as the Court may permit.

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...................................................................................1

I.  INTRODUCTION ...................................................................................................................1

II.  BACKGROUND .....................................................................................................................2

III.  ARGUMENT ...........................................................................................................................4

    A.  The Order Involves a Controlling Question of Law. ..................................................4

    B.  There Is Substantial Ground for Difference of Opinion on Whether Plaintiffs Have Plausibly Alleged an Unreasonable Safety Hazard. ...................................................5

    C.  Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation. ....................................................................................................................9

IV.  CONCLUSION ......................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barton v. Procter & Gamble Co.*,
  2025 WL 486180 (S.D. Cal. Feb. 13, 2025) .................................................................. 6, 7

*Best Carpet Values, Inc. v. Google LLC*,
  2022 WL 22843012 (N.D. Cal. May 2, 2022) .................................................................. 5

*Brickman v. Facebook, Inc.*,
  2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) .................................................................. 6

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) .......................................................................................... 4

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
  2021 WL 5978761 (N.D. Cal. Dec. 17, 2021) ................................................................ 10

*Daly v. The Wonderful Company, LLC*,
  2025 WL 672913 (N.D. Ill. Mar. 3, 2025) ................................................................... 7, 8

*DeLuca v. Farmers Ins. Exch.*,
  2019 WL 4260437 (N.D. Cal. Sept. 9, 2019) ................................................................. 10

*Doe 1 v. Github, Inc.*,
  2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ............................................................... 10

*Grausz v. Hershey Co.*,
  713 F. Supp. 3d 818 (S.D. Cal. 2024) .............................................................................. 8

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
  2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) .................................................................. 8

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................ 9

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
  2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .................................................................. 8

*Henley v. Jacobs*,
  2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) .................................................................. 5

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ........................................................................................... 9

*Krystofiak v. BellRing Brands, Inc.*,
  737 F. Supp. 3d 782 (N.D. Cal. 2024) ........................................................................................7

*Lowe v. Edgewell Pers. Care Co.*,
  711 F. Supp. 3d 1097 (N.D. Cal. 2024) ......................................................................................7

*Martin v. Doctor's Best, Inc.*,
  2023 WL 6370230 (C.D. Cal. Aug. 25, 2023) ............................................................................7

*Mehedi v. View, Inc.*,
  2024 WL 3748012 (N.D. Cal. Aug. 8, 2024) ..........................................................................5, 9

*Nat'l Ass'n of African Am.-Owned Media v. Charter Comms.*,
  2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ..........................................................................5

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
  2025 WL 241084 (W.D. Wash. Jan. 17, 2025) ...........................................................................8

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ...................................................................................................4, 5

*Rodriguez v. Mondelez Glob. LLC*,
  703 F. Supp. 3d 1191 (S.D. Cal. 2023) .......................................................................................8

*Rollins v. Dignity Health*,
  2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ..........................................................................10

*Roth v. Foris Ventures, LLC*,
  2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ..........................................................................5

*Sonos, Inc. v. Google LLC*,
  591 F. Supp. 3d 638 (N.D. Cal. 2022) ........................................................................................5

*In re Trader Joe's Co. Dark Chocolate Litig.*,
  726 F. Supp. 3d 1150 (S.D. Cal. 2024) ...................................................................................8, 9

*Tubbs v. AdvoCare Int'l, LP*,
  2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ...........................................................................7

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) its Order Granting in Part and Denying in Part Philips' Motion to Dismiss the First Amended Complaint (ECF No. 46) ("Order"), given the substantial grounds for difference of opinion on the following controlling question of law: Is a plaintiff asserting a claim under the UCL, FAL, and CLRA for a material omission based on the alleged presence of unsafe contaminants in a product required to plead with specificity both the amount of a contaminant the challenged product contains and the level at which exposure to that contaminant would create an unreasonable safety hazard?

## I. INTRODUCTION

The Court's February 20, 2025 Order, which permitted Plaintiffs to proceed with their UCL, FAL, and CLRA claims based on a material omission theory, satisfies the three requirements of Section 1292(b) and should be certified for immediate interlocutory appeal.

*First*, the Order implicates a controlling question of law: whether a plaintiff asserting a claim under the UCL, FAL, and CLRA for a material omission based on the alleged presence of unsafe contaminants in a product is required to plead with specificity both the amount of a contaminant the challenged product contains and the level at which exposure to that contaminant would create an unreasonable safety hazard. This is a purely legal question, because there is no dispute that the First Amended Complaint ("FAC") does not allege (1) the amount of microplastics leached by the actual Philips products that form the basis of Plaintiffs' claims, or (2) a threshold level at which exposure to microplastics causes an unreasonable safety hazard. This question is also "controlling" because a Ninth Circuit reversal would "materially affect" the outcome of the litigation—in fact, it would fully dispose of Plaintiffs' only remaining claims.

*Second*, there is "substantial ground for difference of opinion" concerning this question. Reasonable jurists could disagree—and have—with the pleading standard the Court applied in the Order. Whereas the Court allowed Plaintiffs to rely on "circumstantial evidence" regarding the amount of microplastics supposedly leached by various unnamed brands of polypropylene baby bottles, *see* Order at 5, other courts in this Circuit addressing similar claims have required plaintiffs to plead with specificity the amount of the contaminant *in the challenged product*. In addition, this Court concluded that Plaintiffs were "not required to allege the specific level at which microplastics pose a danger to the sensitive

1

DEFENDANT'S MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(b) — Case No. 3:24-cv-03781-RFL

population." Order at 5.  Here again, other courts in this Circuit have reached the opposite conclusion and concluded that plaintiffs must plausibly allege a threshold level at which the complained-of health effects occur.

Obtaining the Ninth Circuit's guidance on the appropriate pleading standard for these claims would be particularly valuable given the increasing number of contaminant cases that plaintiffs are filing under California law.[1]  Respectfully, the Court's Order could incentivize the filing of more cases to the extent it stands for the proposition plaintiffs need not allege testing of the product they are challenging nor allege a specific threshold at which exposure to the contaminant is unsafe.  Plaintiffs and defendants alike would benefit from the Ninth Circuit's guidance as to whether that is correct before a wave of contaminant litigation washes further ashore.

*Third*, a ruling from the Ninth Circuit would "materially advance the ultimate termination of the litigation" by potentially resolving the entire case.

For these and additional reasons described below, Philips respectfully requests that this Court certify the Order for immediate appeal.

## II.     BACKGROUND

Philips sells various baby bottles, trainer cups, and sippy cups under the "Avent" brand (the "Products").  *See* FAC ¶ 8.  The bottles are made of polypropylene, a widely used type of plastic that is considered "safe" and "suitable for many applications, such that it is the most widely used plastic in food preparation."  ECF No. 35-8 at 2.[2]

---

[1] *See, e.g.*, William Vita & Diler Cavda, *Microplastics—A New Litigation Trend*, JD SUPRA (Oct. 1, 2024), https://www.jdsupra.com/legalnews/microplastics-a-new-litigation-trend-3550233/ (last accessed March 14, 2025) ("[G]iven the ubiquitous presence of plastic products in our lives, the possibility of unchecked litigation growth is, for manufacturers, a real and troubling possibility."); Alston & Bird, *Bottled Water Microplastics Litigation Is Making a Splash,* PACKING DIGEST (June 18, 2024), https://www.packagingdigest.com/sustainability/bottled-water-microplastics-litigation-is-making-a-splash (last accessed March 14, 2025) (describing the proliferation of microplastics litigation against plastic water bottle manufacturers).

[2] Dunzhu Li et al., *Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation,* 1 Nature Food 746, 746 (2001).

The FAC alleges that the Products leach unspecified amounts of microplastics when exposed to heat and, on that basis, asserts two general theories of deception. *See, e.g.*, FAC ¶¶ 15, 18. First, the FAC alleges that consumers who purchased the Products would interpret the "BPA FREE" statement on the packaging—which Plaintiffs concede is "technically accurate"—to mean that the products are free of not just BPA, but all supposedly harmful "plastic byproducts," including microplastics. *Id.* ¶¶ 6, 36. Second, the FAC alleges that Philips made a material omission in failing to disclose that the Products supposedly leach "harmful" levels of microplastics. *See e.g.*, *id.* ¶ 36. The FAC asserts claims on behalf of a putative nationwide class under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"), in addition to bringing claims for Unjust Enrichment and Breach of Warranty. *See* FAC ¶¶ 68–149.

Philips moved to dismiss the FAC on several grounds. In relevant part, Philips argued that Plaintiffs failed to plausibly allege an "unreasonable safety hazard" giving rise to a duty to disclose, because the FAC failed to allege with specificity (1) the level of microplastics, if any, leached by *Philips'* Products, relying instead on a single study of unnamed polypropylene bottles; and (2) the level at which microplastics pose an unreasonable safety hazard. ECF No. 34 at 7–9. Philips also argued that the FAC did not plausibly allege a material omission under the alternative "central functionality" theory, since the alleged defect did not render the Products incapable of use by any consumer. *Id.* at 9–11. Finally, Philips moved to dismiss Plaintiffs' affirmative representation claims because no reasonable consumer would be misled by the "BPA FREE" representation. *Id.* at 5–6.

On February 20, 2025, the Court issued its Order. *See* ECF No. 46. The Court concluded Plaintiffs' affirmative misrepresentation theory could not form the basis of any claim, agreeing with Philips that the "BPA FREE" representations were "specific and truthful, and therefore, cannot be treated as affirmative misrepresentations." Order at 3; *see also id.* at 9 (dismissing claim for breach of warranty with prejudice). The Court also agreed that Plaintiffs did not plausibly allege a material omission related to the central functionality of the Products. *Id.* at 6–7. However, the Court sustained Plaintiffs' claims under the UCL, FAL, and CLRA based on the material omission of an unreasonable safety hazard. *See id.* at 4–6. The Court recognized that the FAC lacked allegations specific to the challenged Products but

1  reasoned that Plaintiffs' citation to a study of unnamed brands of polypropylene bottles was "sufficient to
2  allege that the plastic feeding bottles leach microplastics at high levels." *Id.* at 5. Moreover, although
3  Plaintiffs had not alleged a threshold level at which microplastics would pose an unreasonable safety
4  hazard, the Court reasoned that "[a]t this stage, Plaintiffs are not required to allege the specific level at
5  which microplastics pose a danger to the sensitive population." *Id.* at 5.[3]

6  Philips brings this Motion requesting that the Court certify for interlocutory appeal its Order
7  holding that Plaintiffs have "stat[ed] a claim for material omission of an unreasonable safety hazard."
8  Order at 2.

## III. ARGUMENT

Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if it involves (1) "a controlling question of law," (2) as to which there are "substantial ground[s] for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). These criteria are satisfied here.

### A. The Order Involves a Controlling Question of Law.

The Court's Order involves a "controlling question of law" because the conclusion that Plaintiffs adequately alleged a material omission based on an unreasonable safety hazard raises a purely legal question that could materially affect the outcome of the litigation.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Here, Plaintiffs' only remaining claims are based on their theory that Philips had a duty to disclose an unreasonable safety hazard. *See* Order at 9 (holding that Plaintiffs failed to plead any affirmative misrepresentation). Accordingly, a ruling by the Ninth Circuit clarifying the pleading requirements for such omissions claims would not only "materially affect" the

---

[3] On March 13, 2025, Plaintiffs filed the Second Amended Complaint ("SAC"), *see* ECF No. 50, which is identical to the FAC but includes additional allegations regarding Plaintiffs' claims for injunctive relief in response to the Court's order dismissing those claims without prejudice.

outcome of the litigation, but also could result in outright dismissal of the entire case. *See, e.g.*, *Roth v. Foris Ventures, LLC*, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (finding the "controlling question of law" requirement readily satisfied where "the entire case would be dismissed" based on a Ninth Circuit reversal); *Mehedi v. View, Inc.*, 2024 WL 3748012, at *1 (N.D. Cal. Aug. 8, 2024) (same); *see also Nat'l Ass'n of African Am.-Owned Media v. Charter Comms.*, 2016 WL 10647193, at *4 (C.D. Cal. Dec. 12, 2016) (reasoning that certification is proper if even "one question support[s] certification.").

Certification is also appropriate because the question at issue is "a purely legal one that can be resolved quickly without delving into [the] particular case's facts." *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019). First, there is no dispute that Plaintiffs have neither tested the Products nor cited any tests of the Products. Rather, Plaintiffs cited a study of unnamed brands of polypropylene bottles. *Infra* at 6. Second, there is no dispute that Plaintiffs have not identified a specific threshold level at which exposure to microplastics, which are ubiquitous in the environment, pose an unreasonable safety hazard. *See* Order at 5–6. Although Plaintiffs identify various health conditions allegedly linked to the bioaccumulation of microplastics, they do not identify a specific level at which these complained-of health effects occur. *Id.* In short, there is no dispute about the alleged facts. There is only a dispute as to the appropriate pleading standard for a material omission claim and whether Plaintiffs' allegations satisfy that standard. This appeal would accordingly present "[a] legal question[] that do[es] not depend on a material dispute of fact." *Best Carpet Values, Inc. v. Google LLC*, 2022 WL 22843012, at *2 (N.D. Cal. May 2, 2022); *see also Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 649 (N.D. Cal. 2022) (recognizing the "vast amount of resources being consumed in the district courts over such pleading issues" and certifying for interlocutory appeal under 28 U.S.C. § 1292(b) the court's order addressing the "ground rules" for pleading infringement claims).

**B.    There Is Substantial Ground for Difference of Opinion on Whether Plaintiffs Have Plausibly Alleged an Unreasonable Safety Hazard.**

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese*, 643 F.3d at 688. "One of the best indications that there are substantial grounds for disagreement on a question of law" is where, as here, "other courts have, in fact, disagreed."

1  *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) (citation omitted).  The second criterion of Section 1292(b) is satisfied here because "other courts have, in fact, disagreed" with the pleading standard this Court adopted in concluding Plaintiffs had stated claims under the UCL, FAL, and CLRA for a material omission.

In denying Philips' motion to dismiss Plaintiffs' material omission claims, the Court held that Plaintiffs were not required to allege the amount of microplastics leached by the challenged products. Rather, the Court credited Plaintiffs' reliance on a single study of unnamed brands of polypropylene infant feeding bottles, which found that the various tested bottles released somewhere between "1,310,000 ± 130,000 to 16,200,000 ± 1,300,000 particles per litre." ECF No. 35-8 at 4 (Li et al., *supra* n.2).[4]  That study, the Court concluded, constituted sufficient "circumstantial evidence to infer that similar rates of release occur during the course of use of Defendant's Products." Order at 5.  Likewise, the Court concluded Plaintiffs were not required to allege "the specific level at which microplastics pose a danger to the sensitive population."  Rather, the Court held that it was sufficient for Plaintiffs to cite various studies discussing the alleged risks of exposure to and "significant bioaccumulation" of microplastics, even though none of those studies establish a specific threshold at which exposure to microplastics becomes unsafe.  *See* Order at 5–6.

The pleading requirements the Court adopted for Plaintiffs' material omission claim cannot be reconciled with decisions of other courts in this Circuit (and elsewhere).  To start, when asserting claims based on allegedly harmful contaminants in a product, courts have required testing allegations specific to the challenged products.  For example, in *Barton v. Procter & Gamble Co.*, 2025 WL 486180 (S.D. Cal. Feb. 13, 2025), plaintiffs brought misrepresentation and omissions claims based on the alleged presence of lead in tampons.  Although the *Barton* plaintiffs' claims pertained to three different sizes of tampons

---

[4] The Court's Order also referenced Plaintiffs' citation to an article by Kazi Albab Hussain et al. for the proposition that a "single infant consuming formula from polypropylene bottles ingests between 14,600 and a staggering 4.55 million microplastic particles every single day." Order at 5 (quoting FAC at ¶ 31). However, in support of this statement the authors cite the same Li study on which Plaintiffs (and the Court) put much emphasis.  *See* ECF No. 35-10 at 6 (Hussain et al., *Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health*, 57 Env't Sci. & Tech. 9782 (2023) (citing 2020 Li study)).

1    (light, regular, and super), the complaint alleged testing of only the "super" size products. *Id.* at *7. The
2    *Barton* court dismissed plaintiffs' claims for failure to comply with Rule 9(b)'s heightened pleading
3    standard, holding that "[t]o plausibly allege a presence of harmful substance claim, Plaintiffs are required
4    to allege facts that testing disclosed [the] presence of such substances *in the accused product purchased*."
5    *Id.* at *7 (emphasis added).

6          *Barton*'s holding that "harmful substance claim[s]" require testing allegations specific to the
7    challenged products is consistent with the approach taken by numerous other courts in this Circuit. *See*
8    *Lowe v. Edgewell Pers. Care Co.*, 711 F. Supp. 3d 1097, 1104 (N.D. Cal. 2024) (refusing to credit
9    plaintiffs' speculation, in the absence of reliable testing, that the "hydrophobic components" in the
10   challenged tampons contained "forever chemicals because those chemicals are 'frequently' used to make
11   materials water-repellant"); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 794 (N.D. Cal.
12   2024) ("While inferences are to be made in Plaintiffs' favor at this stage, the Court will not infer the lead
13   content of the untested flavors of protein shake."); *Martin v. Doctor's Best, Inc.*, 2023 WL 6370230, at *6
14   (C.D. Cal. Aug. 25, 2023) (rejecting challenge to statements about supplement where the studies cited by
15   plaintiff did not test the actual supplement at issue); *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at
16   *6 (C.D. Cal. Sept. 12, 2017) (dismissing misrepresentation claims based on article that not did not discuss
17   defendant or its products).

18         One microplastics case decided just weeks ago is especially instructive. *See Daly v. The Wonderful*
19   *Company, LLC*, 2025 WL 672913 (N.D. Ill. Mar. 3, 2025). There, the plaintiffs alleged that bottled Fiji
20   Water was deceptively labeled as "natural" because it contains microplastics. The court observed that
21   plaintiffs had not tested the actual Fiji Water bottles; and while "[i]t would perhaps be sufficient if
22   plaintiffs had cited to relatively contemporaneous tests of other bottles of Fiji Water (whether opened or
23   unopened)," they had not done so. *Id.* at *6. "Rather, their only reference to testing involves other brands
24   of water, not Fiji Water." On that basis, the court concluded plaintiffs had failed to state a claim, nothing
25   that to decide otherwise would invite unintended consequences:

26   > Allowing a suit of this type to proceed on this basis would basically open
     > the door to enabling any purchaser of any consumable product to file a
27   > lawsuit simply saying, "I bought product X, and it contains microplastics"
28   > (or "forever" chemicals, or heavy metals, or whatever) and thereby get past

a motion to dismiss and into discovery and class certification proceedings. Given the context (consumable products claimed to include contaminants), plausibility requires more.

*Id.* at *7. Here too, Plaintiffs have cited only testing of other brands of baby bottles, not the Philips bottles. A decision from the Ninth Circuit confirming that does not suffice to state a claim would shut the door to the types of lawsuits that troubled the *Daly* court.

In addition, while this Court held that Plaintiffs need not allege "the specific level at which microplastics pose a danger to the sensitive population," Order at 5, other courts have reached the opposite conclusion. For example, in *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024), the plaintiff alleged that the challenged product contained a "high" level of cadmium that was unsafe, but the court found neither the scientific studies cited by plaintiff nor the Proposition 65 Maximum Allowable Dose Level (MADL) sufficed to establish a "plausible standard for what constitutes 'high.'" *Id.* at *8. In the absence of some standard to assess whether "cadmium poses a health threat *at the levels that it appears in the Products* rather than at undefined 'high' levels," plaintiff failed to state a claim. *Id*. Other decisions are in accord. *See, e.g.*, *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) (holding that plaintiffs' allegations that even "[l]ow levels of lead can inhibit neurological function" were insufficient to establish that the specific levels in the product at issue posed an "*unreasonable* safety hazard."); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 828 (S.D. Cal. 2024) (dismissing omission claim because plaintiff failed to allege that the "amounts [of lead] *at issue here* are actually enough to cause the health effects" alleged in the complaint); *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) (dismissing omissions claims under California law where plaintiffs failed to "plausibly alleg[e] what concentration of various heavy metals in baby food products would actually be unsafe for babies and toddlers to consume"); *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 2025 WL 241084, at *5, 12–13 (W.D. Wash. Jan. 17, 2025) (holding that plaintiffs failed to establish an unreasonable safety hazard under California law where they could not allege harm "from the specific amount of lead in the Stanley cups").

In its Order, this Court cited *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024), for the proposition that "Plaintiffs may not be able to pinpoint a specific level at

which these Products would become an unreasonable safety hazard or unfit for human consumption, [but] they have to at least provide *some connection* between the general harms possible from Heavy Metals and the levels of Heavy Metals in these Products." *See* Order at 4 (citing *In re Trader Joe's*, 726 F. Supp. 3d at 1170). But the "connection" required by the *Trader Joe's* court was, in fact, allegations *specific* to the lead levels of the challenged products. There, the court observed that plaintiffs alleged that the challenged products "have been shown to contain detectable levels of Heavy Metals which are known to pose human health risks." *Id.* 1157. The Court found this allegation insufficient, reasoning that "alleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard or make them unfit for human consumption." *Id.* Accordingly, the court dismissed plaintiffs' omission-based claims. Here too, Plaintiffs have alleged the microplastics pose risk at "unidentified levels." *Trader Joe's* thus supports *dismissal* of Plaintiffs' claim.

In the absence of Ninth Circuit guidance on this issue, certification of this question would provide important clarity on the pleading requirements for UCL, FAL, and CLRA claims based on a material omission of an unreasonable safety hazard. *See, e.g.*, *Mehedi v. View, Inc.*, 2024 WL 3748012, at *2 (N.D. Cal. Aug. 8, 2024) (certifying decision under 1292(b) where the Ninth Circuit had not addressed the controlling question); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) ("Courts have noted that the law concerning a defendant's duty to disclose in a fraudulent omissions case is "marked by 'general disarray.'") (citation omitted)).

### C. Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.

Finally, the third criterion under Section 1292(b) is satisfied: interlocutory review would "materially advance" the litigation because a Ninth Circuit ruling on the proposed question "may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (internal quotation and citation omitted).

Immediate appellate review could fully dispose of Plaintiffs' only remaining claims. This Court dismissed Plaintiffs' claims to the extent they were based on an affirmative misrepresentation theory, *see* Order at 9, so Plaintiffs' only remaining claims under the CLRA, FAL, and UCL are based on the alleged material omission of an unreasonable safety hazard. A decision concluding Plaintiffs had failed to state those claims would also be dispositive of Plaintiffs' claim for unjust enrichment, which is based on the same conduct as Plaintiffs' statutory claims. *See* Order at 9. This alone is more than enough to "materially advance" the litigation. *See Core Optical Techs., LLC v. Juniper Networks Inc.*, 2021 WL 5978761, at *1 (N.D. Cal. Dec. 17, 2021) (noting that the third § 1292(b) requirement is met where a reversal on appeal would likely terminate the litigation); *see also supra* Part III.A; *DeLuca v. Farmers Ins. Exch.*, 2019 WL 4260437, at *5 (N.D. Cal. Sept. 9, 2019) ("This factor is closely related to the question of whether an issue of law is 'controlling'" (citation omitted)); *Rollins v. Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014) ("[T]he considerations of this factor overlap significantly with the first one"). Moreover, given that district courts regularly address similar claims based on alleged product contamination, "[t]he Ninth Circuit resolving this issue would materially advance not only this particular case, but others in the Circuit raising the same issue." *Doe 1 v. Github, Inc.*, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024). *See also supra* Part III.B.

## IV.   CONCLUSION

This Court should certify its Order February 20, 2025 Granting in Part and Denying in Part Philips' Motion to Dismiss (ECF No. 46) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) to address the following question: Is a plaintiff asserting a claim under the UCL, FAL, and CLRA for a material omission based on the alleged presence of unsafe contaminants in a product required to plead with specificity both the amount of a contaminant the challenged product contains and the level at which exposure to that contaminant would create an unreasonable safety hazard?

DATED:  March 19, 2025                                    Respectfully submitted,


                                                          By: */s/ Cortlin H. Lannin*

Cortlin H. Lannin (SBN 266488)
Raymond G. Lu (SBN 324709)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  clannin@cov.com
Email:  rlu@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA  94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: mrodgers@cov.com

*Attorneys for Defendant Philips North America LLC*